PEACE v. TIPPETT.

4-4875

Opinion delivered March 7, 1938.

800

Gaughan, Sifford, Godwin & Gaughan, for appellant.
Hardy & Morrow, for appellees.

GRIFFIN SMITH, C. J. Prior to 1929 appellees were the owners of the 40-acre tract of rural land involved in the suit from which this appeal came. Taxes for 1929, due in 1930, were not paid. Appellant purchased at the collector's sale.

The parties stipulated that suit was filed September 19, 1935; that summons was issued on the 19th and by the clerk delivered to appellees' attorney; that on December 18, 1936, the attorney gave the summons to a deputy sheriff, who served it.

Appellant contends that act 142 of 1935 was in effect as to this suit when it was commenced. This act, which was repealed by act 264, approved March 17, 1937, contained a provision that it should not apply "to any suit now pending seeking to set aside [a tax sale] or to any suit brought within six months from the effective date of this act for the purpose of setting aside any such sale." Act 142 was approved March 20, 1935.

In the original complaint nine separate grounds were assigned for avoiding the sale. In an amendment to the complaint other reasons were alleged.

The court found (1) that the assessor failed to make the affidavit, as required by law, to the real estate assessments in 1928 and 1929, "showing that he had made an assessment of all lands in the county and had appraised them at the true value, and that the assessment

of real estate for the year 1929 was illegal and void.''
(2) That there was no affidavit made by the collector and attached to the original lists which were returned delinquent for the nonpayment of taxes for 1929, as required by law. (3) That the clerk failed to certify as to the notice of sale, as required by law.

We are of the opinion that the provisions of act 142 of 1935 are applicable. In *Sims* v. *Miller,* 151 Ark. 377, 236 S. W. 828, Chief Justice McCulloch, speaking for the court, said: ''Our statutes provide that the commencement of a civil action is the 'filing in the office of the clerk of the proper court a complaint and causing a summons to be issued thereon.' The delivery of the writ to an officer is an essential part of the issuance of the writ, and until this is done an action is not properly commenced.''

In the instant case, although the summons was issued in form, it was delivered to an attorney for appellees, who retained it for almost fifteen months. This conduct negatived an intention that the summons should be served in a timely manner. Suit was not commenced when the summons was written, signed, and delivered to the attorney.

 Did the assessor fail to make an affidavit, as required by law, to the real estate assessments in 1928 and 1929, thereby rendering the 1929 assessments void?

C. N. Sweatman, a witness for appellees, testified that he was assessor for Ouachita county in 1928, 1929, and 1930. He identified the record showing assessment of the property in question.

''Q. Do you find an affidavit there stating that you assessed that land at its actual value? A. Yes. It is in the front of the book.''

Asked if he made a certain certificate, the witness replied: ''The one I made is in the back of the book.''

The witness then testified that ''They gave me the book in December, 1928, for the year 1929. They gave me the affidavit when they gave me the book, and it is the only affidavit I made.''

"Q. After you got through with the assessment you didn't make the affidavit that is required of you? A. I made the one in that book."

Preceding the questions and answers just quoted the witness was asked: "I will ask you if you made this certificate: 'I, Oscar N. Sweatman, assessor for Ouachita county, Arkansas, do solemnly swear that I have made diligent efforts to ascertain all taxable property and persons subject to taxation in Ouachita county; that so far as I have been able to ascertain the same is correctly set forth and described in the foregoing report, and that the property mentioned therein is not appraised at less than its true market or actual value'."

It seems that this affidavit was the one attached after the books had been delivered to the assessor.

Act 172 of 1929 directs that, beginning with 1929 and in each odd year thereafter the assessor shall file his report with the county clerk showing assessment of all real property within the boundaries of any city or town and additions thereto; and beginning in 1930 and in each even year thereafter the assessor shall likewise file his report covering rural real property. Beginning with 1929 and each year thereafter personal property assessments are directed to be made. The act then provides that the report shall be properly filed in books of record, and . . . "the clerk shall not receive said reports unless they are in a neat and legible manner, and to each of which the assessor shall have attached his oath." [As set out in § 18.]

It will be observed that act 172 does not require that real property other than that situated within the boundaries of cities or towns and additions thereto be assessed in 1929. Rural acreage fell within the directions for assessments beginning in 1930, thereafter to be assessed in even numbered years. It follows that the certificate or oath required would be that which appeared as § 9915 of Crawford & Moses' Digest.

The testimony does not show what oath was taken, or what certificate was indorsed upon the books. The

witness testified: "I made the oath in the book." In attempting to identify the record counsel for appellees asked the witness whether he made "this" certificate. Certain language was then read without showing whether such reading was from the book in question or from statutory provisions.

■ It is next insisted that the collector failed to make the statutory affidavit; and the court so found.

Section 10082 of Crawford & Moses' Digest was substantially re-enacted by act 282 of 1935 and now appears as § 13845 of Pope's Digest. It directs that "The collector shall . . . file with the clerk . . . a list of all such taxes levied on real estate as such collector has been unable to collect . . ."

J. T. Word, county clerk, a witness for appellees, was asked if he had retained the lists of delinquent lands [assessments of 1929, sold delinquent in 1930]. He replied that he had retained such lists; that they were made out on separate sheets and stamped "filed." These lists, he testified, were copied onto the permanent records. The several original sheets were fastened together. In response to a question he said: "Yes, there is a sheet torn off."

The lists appearing in Delinquent Land Sale Record Book "C" carried the certificate of the collector.

The evidence offered was not sufficient to overcome the verity which attaches to the official public record. At most it was only shown that the certificate was not with the sheets at the time they were brought in as exhibits. This occurred six years after the transaction had been consummated. There were physical evidences that another sheet had at one time been attached as a part of the lists.

■ The vice urged against the clerk's certificate is that the name of the clerk was signed by his deputy. The clerk, however, testified that this had been authorized.

In the light of all of the testimony we feel that the decree of the chancery court is erroneous. It is, there-

fore, reversed, and the cause is remanded with directions to enter an order dismissing the complaint.